No. 22-3436

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

JAMES SMITH, Individually on behalf of all
Others similarly situated,

     Appellee,

          v.

SCOTTSDALE INSURANCE COMPANY,

     Appellant,

AMERICAN DETECTIVE SERVICES, INC.,

     Appellee.

---

APPELLANT'S BRIEF

---

From the October 3, 2022 Order of the United States District Court for the Western
District of Missouri in Case No. Case No. 2:22-CV-4115 (Phillips, C.J.)

---

Russell F. Watters, MO #25758
John D. Cooney, MO #61080
Lucas J. Ude, MO #66288
Benjamin S. McIntosh, MO #68248
Watters, Wolf, Bub & Hansmann, LLC
ATTORNEYS FOR APPELLANT
SCOTTSDALE INSURANCE COMPANY

# SUMMARY OF THE CASE

On April 14, 2022, Appellee James Smith secured a purported class action arbitration award against Appellee American Detective Services ("ADS") in the amount of $54 million plus post-award interest of nine percent per annum. This award came on the heels of Smith and ADS entering into a collusive "non-execution agreement" pursuant to RSMo. § 537.065, in which Smith agreed to pursue collection of any judgment from ADS's insurers, not ADS directly. On June 2, 2022, Smith secured a purported class action judgment confirming this arbitration award.

Smith then filed an equitable garnishment action under RSMo. § 379.200 in Missouri state court against Appellant Scottsdale Insurance Company ("Scottsdale") seeking the insurance benefits under ADS's policy with Scottsdale to satisfy this judgment. Scottsdale removed to federal court. The District Court remanded, finding CAFA's jurisdictional minimum of more than $5 million was not met. However, the minimum is met here because Scottsdale reasonably extrapolated that a factfinder could legally conclude post-judgment interest on the $54 million judgment alone exceeds $5 million. Regardless, the class's claims implicate five Scottsdale policy periods with combined limits of $5 million, so only a single cent of post-judgment interest satisfies the jurisdictional minimum. The remand order should be reversed.

Scottsdale requests twenty minutes for oral argument, which is necessary to ensure the complex issues presented by this appeal are fully addressed.

i

**RULE 26.1 DISCLOSURE OF ORGANIZATIONAL INTERESTS**

Appellant Scottsdale is wholly owned by Nationwide Mutual Insurance Company. There are no publicly traded entities that own more than a ten percent (10%) interest in Scottsdale.

Appellate Case: 22-3436     Page: 3     Date Filed: 12/15/2022 Entry ID: 5227522

# TABLE OF CONTENTS

SUMMARY OF THE CASE……………………………………………………………i

RULE 26.1 DISCLOSURE OF ORGANIZATIONAL INTERESTS……………..ii

TABLE OF CONTENTS……………………………………………………………iii

TABLE OF AUTHORITIES………………………………………………………v

JURISDICTIONAL STATEMENT………………………………………………..1

STATEMENT OF THE ISSUES…………………………………………………..2

STATEMENT OF THE CASE…………………………………………………….3

    I.    The Underlying Class Action Arbitration Proceedings Culminating in a Judgment of $54 Million Plus 9% Interest Per Annum…………….3

    II.    The Garnishment Action Removed by Scottsdale and Remanded by the District Court……………………………………………………..8

SUMMARY OF THE ARGUMENT……………………………………………..11

ARGUMENT……………………………………………………………………..15

    I.    THE DISTRICT COURT ERRED IN REMANDING THIS CASE BECAUSE MORE THAN $5 MILLION WAS IN CONTROVERSY……………………………………………………...15

    A.    It is Well-Established that Where, as Here, Interest is Part of the Plaintiff's "Principal Demand," Such Interest Is Included in Calculating the Amount in Controversy……………………………15

    B.    The District Court Should Have Included Post-Judgment Interest on the $54 Million Judgment as of the Reasonably Anticipated Date of Trial in its Calculation of the Amount in Controversy……………...25

    C.    Even if the District Court was Correct in Considering Only Interest Accrued by the Date of Removal, the Remand Order was Still

Appellate Case: 22-3436    Page: 4    Date Filed: 12/15/2022    Entry ID: 5227522

Erroneous Because $5 Million in Policy Limits Were At Issue, So Only a Single Cent of Interest was Necessary to Establish the Jurisdictional Amount……………………………………………30

CONCLUSION……………………………………………………...37

CERTIFICATE OF COMPLIANCE……………………………...38

CERTIFICATE OF SERVICE……………………………………39

Appellate Case: 22-3436    Page: 5    Date Filed: 12/15/2022 Entry ID: 5227522

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*,
    645 F.3d 954 (8th Cir. 2011)……………………………………………………15

*Allen v. Bryers*,
    512 S.W.3d 17 (Mo. 2016)…………………………………………..2, 11, 17

*Back Doctors Ltd. V. Metro. Prop. & Cas. Ins. Co.*,
    637 F.3d 827 (7th Cir. 2011)……………………………………………….32

*Broglie v. MacKay-Smith*,
    541 F.2d 453 (4th Cir. 1976)……………………………………………….27

*Brown v. Webster*,
    156 U.S. 328 (1895)……………………………………….2, 11, 15-17, 19

*Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*,
    53 F.4th 361 (5th Cir. 2022)………………………………………………16, 24

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
    574 U.S. 81 (2014)……………………………………………………………25

*Edwards v. Bates County*,
    163 U.S. 269 (1896)………………………………………………………..18

*Gambino v. Am. Guarantee & Liab. Ins. Co.*,
    No. 3:09-CV-00304(CFD), 2009 WL 3158151 (D. Conn. Sept. 28,
    2009)………………………………………………………………………..19

*Goff v. Menke*,
    672 F.2d 702 (8th Cir. 1982)……………………………………………….32

*Gutierrez v. Wells Fargo Bank, NA*,
    889 F.3d 1230 (11th Cir. 2018)……………………………………………34

*Hargis v. Access Capital Funding, LLC*,
    674 F.3d 783 (8th Cir. 2012)……………………………………………….31

v

*Hatridge v. Aetna Casualty & Surety Co.,*
    415 F.2d 809 (8th Cir.1969)……………………………………………..28

*Hood v. Gilster-Mary Lee Corp.,*
    785 F.3d 263 (8th Cir. 2015)……………………………………………31

*Kopp v. Kopp,*
    280 F.3d 883 (8th Cir. 2002)……………………………………………27

*Lizama v. Victoria's Secret Stores, LLC,*
    36 F.4th 762 (8th Cir. 2022)……………………………………………..28

*Marple v. T-Mobile Cent. LLC,*
    639 F.3d 1109 (8th Cir. 2011)…………………………………………...33

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985)……………………………………………..2, 7, 34

*Phoenix Scotts-Sports v. Kadish,*
    321 F.Supp. 556 (D.Ala. 1971)…………………………………………23

*Pirozzi v. Massage Envy Franchising, LLC,*
    938 F.3d 981 (8th Cir. 2019)……………………………………………26

*Raskas v. Johnson & Johnson,*
    719 F.3d 884 (8th Cir. 2013)…………………………………………15, 26

*Regan v. Marshall,*
    309 F.2d 677 (1st Cir. 1962)…………………………………………...16, 20

*Ressler v. Clay Cty.,*
    375 S.W.3d 132 (Mo. App. W.D. 2012)……………………………...2, 4, 34

*Richie v. Richie,*
    186 F.Supp. 592 (EDNY 1960)……………………………………...20-21

*Shaw v. Gwatney,* 7
    95 F.2d 1351 (8th Cir. 1986)……………………………………...27-28

Appellate Case: 22-3436    Page: 7    Date Filed: 12/15/2022 Entry ID: 5227522

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011)…………………………………………………..34

*Snider v. State Farm Mut. Auto. Ins. Co.*,
    360 F. Supp. 929 (S.D. W. Va. 1973)………………………………15, 19

*Sondel v. Northwest Airlines, Inc.*,
    56 F.3d 934 (8th Cir. 1995)…………………………………………..32

*State ex rel. Byrd v. Chadwick*,
    956 S.W.2d 369 (Mo. Ct. App. 1997)………………………………….7

*State ex rel. Union Planters Bank, N.A. v. Kendrick*,
    142 S.W.3d 729 (Mo. banc 2004)……………………………………..32

*State Farm Mut. Auto. Ins. Co. v.* Narvaez,
    149 F.3d 1269 (10th Cir. 1998)……………………………………...21-22

*Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co*.,
    597 S.W.3d 362 (Mo. App. 2020)……………………………………..35

*Waters v. Ferrara Candy Co.*,
    873 F.3d 633 (8th Cir. 2017)……………………………….2, 12, 26, 28

*Waters v. Home Depot USA, Inc*.,
    446 F. Supp. 3d 484 (E.D. Mo. 2020)………………………………..26

*William B. Tanner Co. v. Cameron Radio, Inc.*,
    617 F.2d 169 (8th Cir. 1980)………………………………………….27

*Williams v. Emps. Mut. Cas. Co.*,
    845 F.3d 891 (8th Cir. 2017)……………………………………….2, 35

## Statutes and Court Rules

15 U.S.C. § 1681b……………………………………………………….3

15 U.S.C. § 1681k……………………………………………………….3

15 U.S.C. §1681n………………………………………………………..3

Appellate Case: 22-3436   Page: 8   Date Filed: 12/15/2022 Entry ID: 5227522

28 U.S.C. 1332……………………………………………………………….passim

28 U.S.C. 1453……………………………………………………………...1

Mo. Rev. Stat. § 379.200………………………………………...i, 11, 13, 17, 27, 35

Mo. Rev. Stat. § 537.065…………………………………………………………i

Mo. Sup. Ct. R. 75.01…………………………………………………………8

## **Miscellaneous**

Wright & Miller, *Interest and Costs*, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.)…………………………………………………………………………...15

Merriam Webster Online Dictionary, "extrapolate," <https://www.merriam-webster.com/dictionary/extrapolating> …………………………………..29

Appellate Case: 22-3436   Page: 9   Date Filed: 12/15/2022 Entry ID: 5227522

# JURISDICTIONAL STATEMENT

The District Court had proper jurisdiction pursuant to 28 U.S.C. 1332(d), in that this case is a class action with more than 100 plaintiffs and the amount in controversy exceeds $5 million. This Court has jurisdiction pursuant to 28 U.S.C. 1453(c)(1) because this appeal concerns the District Court's October 3, 2022, order granting Smith's motion to remand this class action to state court, which was a final order at the District Court level triggering this Court's jurisdiction to grant permission to appeal such remand order. The appeal is timely because Scottsdale filed a petition for permission to appeal the District Court's remand order on October 12, 2022, which is within the ten days required by 28 U.S.C. § 1453(c)(1). This Court granted Scottsdale's petition for permission to appeal on November 23, 2022.

1

## STATEMENT OF THE ISSUES

1.      Did the District Court err in including post-judgment interest on the $54 million judgment only up to the date of removal in its amount-in-controversy calculations?

*Brown v. Webster*, 156 U.S. 328 (1895).

*Allen v. Bryers*, 512 S.W.3d 17 (Mo. 2016)

*Waters v. Ferrara Candy Co.*, 873 F.3d 633 (8th Cir. 2017).

28 U.S.C. § 1332

2.      Did the District Court err in entering a remand order that allowed Smith to violate his fiduciary duties to the class by abandoning four-fifths of the insurance coverage potentially available to satisfy the underlying judgment?

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

*Ressler v. Clay Cty.*, 375 S.W.3d 132 (Mo. App. W.D. 2012)

*Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891 (8th Cir. 2017)

Mo. Rev. Stat. § 379.200

# STATEMENT OF THE CASE

## I. The Underlying Class Action Arbitration Proceedings Culminating in a Judgment of $54 Million Plus 9% Interest Per Annum.

On November 23, 2020, Smith filed a putative class action lawsuit in the Circuit Court of Clinton County, Missouri, "on behalf of all similarly situated individuals" alleging putative classes "suffered statutory damages under the FCRA when ADS failed to comply with the requirements of 15 U.S.C. § 1681b(b)(1), 15 U.S.C. § 1681b(b)(3), and 15 U.S.C. § 1681k, which entitled him and the putative classes to statutory and punitive damages per 15 U.S.C. §1681n." (App. 0010; R. Doc. 1, at 5).

Scottsdale was the liability insurer for ADS at the time Smith's putative class action was filed. Scottsdale had issued insurance policies to ADS over multiple year-long policy periods, each with $1 million liability policy limits and supplemental coverage for post-judgment interest including policy no. CPS3062449, with effective dates of June 1, 2018 to June 1, 2019, which was potentially applicable to the time period of Smith's individual claim. While Smith's putative class action was pending in 2021 and early 2022, there was no order by the state court certifying a

3

class action under Missouri Rule 52.08, (App. 0011; R. Doc. 1, at 6), meaning only the claim of named plaintiff Smith was before the state court.[1]

It was in this context that, on October 27, 2021, counsel for Smith made a written policy limits demand to ADS which was conveyed to Scottsdale for consideration. Counsel for Scottsdale communicated to Smith's counsel about this demand—including its shortcomings and lack of specificity—in a letter dated February 17, 2022, stating in part:

> [Smith's] October Demand was not specific as to its terms *in light of the fact that the class you purport to represent has not been determined, not been certified* and there has been no plan to address any potential opt-outs. Moreover, you have provided no confirmation the court has approved you to act as class counsel with the authority to negotiate on behalf of all class members. *At this time, it appears you do not have the capacity to act on behalf of a class that has not been identified and certified* and therefore cannot offer to release those claims belonging to the class at this time.

(App. 0245-0246; R. Doc. 12-2, at 1-2) (emphasis added). It was in this letter, sent prior to any class being certified, that Scottsdale advised its policy applicable to Smith's individual claims provided "coverage with liability limits of $1,000,000 per claim/occurrence and $2,000,000 in the aggregate." *Id*.

Ultimately a settlement was not reached. On February 28, 2022, Smith voluntarily dismissed his and the putative classes' claims without prejudice. This

---

[1] This is blackletter Missouri law. *Ressler v. Clay Cty*., 375 S.W.3d 132, 138 (Mo. App. W.D. 2012) (until certification, the "claims of the putative class members [] are not before the court . . . .").

4

occurred after Smith and ADS entered into a "non-execution agreement" under RSMo. § 537.065 *and* purportedly entered into an agreement to arbitrate this uncertified class action dispute. (App. 0011; App. 0054-0055; R. Doc. 1, at 6; R. Doc. 1-4, at 1-2). Other than Smith, however, none of the "class members" had arbitration agreements with ADS, nor were they given notice of this arbitration agreement. *Id*. Nevertheless, Smith purportedly entered the arbitration agreement "individually **and on behalf of all others**." *Id.* The arbitration agreement was signed by Smith only, and he is the only claimant named in the agreement. *Id*.

Less than one month later, on March 4, 2022, Smith and ADS submitted their dispute to "binding arbitration." (App. 0056-0071; R. Doc. 1-5, at 1-16). On April 4, 2022, the arbitrator issued his Arbitration Award, which purported to *simultaneously* (1) certify a class of more than 22,000 people encompassing claims from "the period from November 15, 2015, through October 31, 2019" *and* (2) enter a damages award of more than $54 million plus "post-award interest in the amount of 9% from the date of this award." (App. 0058-0059, 0061-0071; R. Doc. 1-5, at 3-4, 6-16). ***The "class" was never given notice of the class action or the settlement agreement agreeing to "arbitrate" their claims. The "class" was never provided an opportunity to opt out***. (App. 0058; R. Doc. 1-5, at 3).

On April 13, 2022, Smith filed a petition to confirm the arbitration award in the Circuit Court of Clinton County along with a proposed judgment. (App. 0012;

5

R. Doc. 1, at 7). The next day, the Court signed a proposed judgment filed by Smith confirming the award. *Id*. The judgment provided:

> "The Court incorporates the arbitrator's award into this judgment and this judgment constitutes the final judgment of the Court. **The Court further orders that interest on the award shall run at 9% per annum as ordered in the award and shall be calculated as running from the date of the award.**"

*Id*. (emphasis added). Again, the "class" was never given notice of the arbitration award or the lawsuit seeking confirmation of the arbitration award. The "class" was again not provided any opportunity to opt out or be heard prior to judgment being entered. Smith and ADS did also not provide Scottsdale notice of this arbitration award, the newly filed lawsuit seeking confirmation of the arbitration award, or the judgment confirming the award. Instead, Scottsdale discovered this on Missouri's e-filing system, Case Net. *Id*.

On May 5, 2022, Scottsdale moved to intervene and file a motion to vacate the arbitration award and judgment. Scottsdale argued it had a statutory right to intervene under RSMo. § 537.065, that it otherwise had sufficient interest to intervene as a matter of right, and that the court should permissively allow intervention. (App. 0009, R. Doc. 1, at 4; App. 0078-0094, R. Doc. 1-8, at 1-17; App. 0095-0125, R. Doc. 1-9, at 1-31). In the motion to vacate, Scottsdale argued, *inter alia*: (1) that judgment had to be vacated under § 537.065 because Scottsdale was not given a copy of the non-execution agreement as the statute requires; (2) the

Appellate Case: 22-3436     Page: 15     Date Filed: 12/15/2022 Entry ID: 5227522

arbitrator exceeded his authority because the putative class members were not party to an arbitration agreement with ADS or the arbitration itself; and (3) the arbitration award and judgment violated due process because the absent class members were given no notice, no opportunity to opt-out, and the court's order did nothing to oversee class counsel's handling of funds recovered for the class. (App. 0009; R. Doc. 1, at 4).

As it relates to the violation of due process in particular, Scottsdale advised the state court in its motion to vacate the judgment:

> A final judgment in a class action can bind absent class members only if it was rendered consistent with the requirements of due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 81 1-12 (1985) ("If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection.").
> …
> Due process requires absent class members "receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). To satisfy due process, notice to a class member that a class action has been certified must be "reasonably calculated, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *State ex rel. Byrd v. Chadwick*, 956 S.W.2d 369, 385 (Mo. Ct. App. 1997) (quoting *Phillips Petroleum*). Additionally, "due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum*, 472 U.S. at 812.

(App. 0116-0117; R. Doc. 1-9, at 22-23).

On May 12, 2022—just before the April 14, 2022, judgment would become final—counsel for Scottsdale called up its motion to intervene in the Circuit Court of Clinton County. Counsel for Smith and ADS did not appear because they stated they were unavailable. The court did not rule on the motion to intervene, but instead entered an order setting aside the April 14 judgment and reopening the matter "for additional evidence on June 2, 2022" pursuant to Missouri Supreme Court Rule 75.01. (App. 0075; R. Doc. 1-7, at 2). On June 2, 2022, the state court took up and denied Scottsdale's motion to intervene, and further ordered its April 14 judgment reinstated. (App. 0074; R. Doc. 1-7, at 1). Scottsdale has timely appealed this order and judgment to the Missouri Court of Appeals, where the appeal remains pending.

## II. The Garnishment Action Removed by Scottsdale and Remanded by the District Court.

On June 7, 2022, Smith filed this action for equitable garnishment under RSMo. § 379.200 in the Circuit Court of Cole County. Smith alleges the Errors and Omissions portion of Scottsdale's policy provides coverage to ADS for the underlying state court judgment. Smith alleges Scottsdale insured ADS under policy number of CPS3062449 with a single policy limit of $1,000,000.00. (App. 0013; R. Doc. 1, at 8). However, the arbitrator's finding (adopted by the judgment) that the class included a period from November 2015 to October 2019 implicates five policy periods spanning June 1, 2015 to June 1, 2020. *Id*. These policies collectively have limits of **$5,000,000.00** in addition to supplementary coverage for the entire amount

8

of post-judgment interest. As it relates to post-judgment interest in particular, the policies have the following supplementary payments provision regarding post-judgment interest:

### SUPPLEMENTARY PAYMENTS

We will pay, with respect to any "claim" we investigate or settle, or any "suit" against an insured we defend: …

**5.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

(App. 0014; R. Doc. 1, at 9).

On July 29, 2022, Scottsdale timely removed the garnishment action to the U.S. District Court for the Western District of Missouri. On August 9, 2022, Smith and ADS jointly filed a motion to remand challenging jurisdiction solely on the ground that the minimum amount in controversy of $5 million was not satisfied. (App. 0224-0240; R. Doc. 12, at 1-17). Scottsdale opposed the motion, contending the District Court was required to reasonably extrapolate what a fact finder could "legally conclude" about post-judgment interest. (App. 0257-0269; R. Doc. 16, at 1-13). Scottsdale posited it would be reasonable to estimate the litigation would last another 18 months, such that more than $7 million in interest would accrue on the $54 million judgment. (App. 0020-0021; R. Doc. 1, at 15-16). Scottsdale further argued that, even if interest was measured as of the date of removal, more than $5

million was still in controversy because the underlying judgment implicated five Scottsdale policy periods with collective limits of $5 million. Only a single cent of post-judgment interest was needed to establish the jurisdictional minimum. (App. 0018-0019; R. Doc. 1, 13-14).

On October 3, 2022, the District Court granted the motion to remand, reasoning that Smith, as the master of his complaint, could seek a single $1 million policy limit plus interest on the underlying judgment, thereby depriving the unrepresented class members of $4 million in potential additional coverage. (App. 0293-0294; R. Doc. 22, at 3-4) The District Court also held that, if post-judgment interest on the $54 million judgment could be included in calculating the amount in controversy, it had to be measured as of *the date of removal*, meaning only around $1.5 million in interest had accrued. (App. 0295; R. Doc. 22, at 5). Thus, the District Court found only $2.5 million was in controversy and remanded the case. Scottsdale then timely filed its Petition for Permission to Appeal the District Court's remand order. *Id*. This Court granted the Petition, and this appeal has accordingly followed.

10

## SUMMARY OF THE ARGUMENT

The only issue on appeal is whether more than $5 million is in controversy to establish jurisdiction under 28 U.S.C § 1332(d). There is.

Smith filed an equitable garnishment action under RSMo. § 379.200, seeking to recover the insurance benefits available to ADS—Scottsdale's policyholder—to satisfy a $54 million class action judgment confirming an arbitration award entered in violation of due process. Included within that judgment is an award of post-judgment interest at 9% per annum. Missouri's equitable garnishment statute allows a judgment creditor, like Smith, to seek payment of "insurance money" available to a judgment debtor—that is, the policyholder against whom the judgment was entered—to satisfy that judgment. RSMo. § 379.200.

The post-judgment interest on this $54 million judgment alone establishes the amount in controversy. Under *Brown v. Webster*, 156 U.S. 328 (1895), post-judgment interest counts toward the jurisdictional amount in this case because it is part of Smith's "principal demand." An equitable garnishment claim seeks to recover all available insurance benefits. Two types of insurance benefits are relevant to this claim: (1) the policy limits; and (2) supplementary payments. The supplementary payments provision in Scottsdale's policy allows for the recovery of post-judgment interest in addition to the policy limits. Under Missouri Supreme Court precedent in *Allen v. Bryers*, 512 S.W.3d 17 (Mo. 2016), an equitable garnishment plaintiff is

11

entitled to recover post-judgment interest on an underlying judgment when such a supplementary payments provision is in the policy.

Since post-judgment interest can be included in the jurisdictional calculation in this case, the question becomes: how is this calculation performed? The District Court found that interest accrued only up to the date of removal. This was error. Under this Court's precedents, the amount-in-controversy calculation looks to the amount a fact finder could "legally conclude" the plaintiff is owed. A removing defendant, like Scottsdale, can rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish the jurisdictional amount. *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017). Reasonable "extrapolations" are prospective in nature. So, whether a fact finder could "legally conclude" more than $5 million is in controversy necessarily relates to what the fact finder might conclude ***at the time of fact finding***. Had the District Court applied the test properly, it would have found that more than $7 million in potential post-judgment interest *alone* is in controversy (i.e., 18 months of post-judgment interest on a $54 million judgment).[2]

However, even if the District Court was correct to calculate post-judgment interest as of the date of removal, remand was still error. The District Court

---

[2] At the time of the filing of this brief, approximately 8 months have passed since interest began running, meaning approximately $3,880,000 in interest has already accrued.

Appellate Case: 22-3436    Page: 21    Date Filed: 12/15/2022 Entry ID: 5227522

incorrectly found that only $1 million in policy limits were in controversy because Smith only asked for the limits from a single policy period. However, there are actually $5 million in limits spanning the five separate policy periods implicated by the purported class action judgment. To hold otherwise would be to ignore the language of the equitable garnishment statute, which provides that a judgment creditor may recover all "insurance money to the satisfaction of the judgment." RSMo. § 379.200. Holding otherwise would also allow Smith, without notice to or the consent of the 22,000 other class members, to abandon four-fifths of the class's recovery, which would violate his fiduciary duties as a class representative and, in turn, the class's due process rights.

Because $5 million in policy limits are "in controversy," only a single cent of post-judgment interest need be applied to the calculation to establish CAFA jurisdiction. Even accepting Smith and ADS's arguments below, a penny of post-judgment interest is "in controversy" because at least some of that interest was not attributable to any delay by Scottsdale. The arbitration award and judgment provide that post-judgment interest runs *from the date of the arbitration award*. Scottsdale was not given notice of the arbitration award, and only learned of it after Smith petitioned the state court to confirm the arbitration award approximately one week later. During that week, at least a penny of interest accrued without delay by Scottsdale. With $5 million in policy limits at issue and a single penny of interest

Appellate Case: 22-3436     Page: 22     Date Filed: 12/15/2022 Entry ID: 5227522

that Smith admits can be included in the jurisdictional calculation, jurisdiction is established under 28 U.S.C. § 1332(d). The District Court's remand order was erroneous. Scottsdale respectfully asks this Court to reverse it.

14

**ARGUMENT**

## I. THE DISTRICT COURT ERRED IN REMANDING THIS CASE BECAUSE MORE THAN $5 MILLION WAS IN CONTROVERSY.

The existence of subject-matter jurisdiction is a question of law that this Court reviews *de novo*. *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011). CAFA confers federal jurisdiction over class actions when "1) there is minimal diversity; 2) the proposed class contains at least 100 members; and 3) the amount in controversy is at least $5 million in the aggregate." *Raskas v. Johnson & Johnson*, 719 F.3d 884, 886 (8th Cir. 2013). A class action meeting these requirements may be removed to federal court. 28 U.S.C. § 1453(b).

### A. It is Well-Established that Where, as Here, Interest is Part of the Plaintiff's "Principal Demand," Such Interest Is Included in Calculating the Amount in Controversy.

Under CAFA, federal courts have jurisdiction over minimally diverse class actions when "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs…" 28 U.S.C. 1332(d)(2). Although § 1332(d)(2) provides the amount is "exclusive of interest and costs," "if the judgment in one action includes interest, the amount in controversy in a suit on the judgment is measured by the amount of that first judgment, ***including the interest on it***." Wright & Miller, *Interest and Costs*, 14AA Fed. Prac. & Proc. Juris. § 3712 (4th ed.)

Appellate Case: 22-3436    Page: 24    Date Filed: 12/15/2022 Entry ID: 5227522

(emphasis added).[3] The U.S. Supreme Court in *Brown v. Webster* promulgated the "principal demand" test, which established that interest that is part of a plaintiff's "principal demand" is included in the jurisdictional calculation. 156 U.S. 328, 329–30 (1895). The *Brown* Court, in disagreeing with the argument that interest cannot be incorporated into the calculation, stated:

> ***This contention overlooks the elementary distinction between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand.*** As we have said the recovery sought was not the price and interest thereon, but the sum of the damage resulting from eviction. ***All such damage was therefore the principal demand in controversy, although interest and price and other things may have constituted some of the elements entering into the legal unit, the damage which the party was entitled to recover.*** Whether, therefore, the court below considered the interest as an instrument or means for ascertaining the amount of the principal demand, is wholly immaterial, provided the principal demand as made and ascertained was within the jurisdiction of the court. ***Indeed, the confusion of thought which the assertion of want of jurisdiction involves is a failure to distinguish between a principal and an accessory demand.*** <u>***The sum of the principal demand determines the question of jurisdiction.***</u>

*Id*. (emphasis added). Interest is part of the principal demand "where it is a basis for the suit itself." *Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, *4 (5th Cir. 2022); *see also Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir. 1962)

---

[3] *See also Snider v. State Farm Mut. Auto. Ins. Co.*, 360 F. Supp. 929, 931 (S.D. W. Va. 1973) ("This interest is not the interest identified in the phrase "exclusive of interest and costs" in 28 U.S.C. § 1332(a), relating to jurisdiction based on amount in controversy and diversity of citizenship. Interest on the judgment which the insurers are obligated to pay is liability imposed by law. It is a part of the total liability on which the action is based.").

16

(included in calculating the jurisdictional amount when "the principal claim itself, at the time it arose, was made up in part of interest.").

Where, as here, the policy contains a supplementary payments provision providing for payment of post-judgment interest, an equitable garnishment plaintiff's "principal demand" includes interest. This is clear from the language of Missouri's equitable garnishment statute, which provides that "upon the recovery of a final judgment … [the plaintiff/judgment creditor] shall be entitled to have the ***insurance money*** … ***applied to the satisfaction of the judgment***." §379.200, RSMo. (emphasis added). Indeed, the Missouri Supreme Court's decision in *Allen v. Bryers* establishes that post-judgment interest on an underlying judgment is part of the "principal demand' in an equitable garnishment action. 512 S.W.3d 17, 40 (Mo. 2016). In *Allen*, the court ordered an insurer to pay post-judgment interest on *the entire underlying $16 million judgment* in a garnishment action seeking policy limits. The court relied on the supplementary payments provision to reach this conclusion, which was identical to Scottsdale's provision here: "All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance." *Id*.

Again, "the sum of the principal demand determines the question of jurisdiction," *Webster*, 156 U.S. at 330. *Allen* made clear that post-judgment interest

17

on an underlying judgment is part of the "principal demand" in an equitable garnishment action where there is a supplementary payments provision. This reading of the "principal demand" rule is consistent with the U.S. Supreme Court's further explanation of the rule in *Edwards v. Bates County*, 163 U.S. 269 (1896). There, a plaintiff sued to recover both a bond and interest coupons on that bond. *Id*. at 271. The Court, holding that interest coupons could be included in the jurisdictional tally, reasoned: "[t]he claim made by the plaintiff on the coupons was in no just sense accessory to any other demand, but was in itself principal and primary." *Id*. at 273. Reversing the lower court's ruling that the minimal jurisdictional amount was lacking, the Court concluded that the interest coupons "should have been treated as an independent, principal demand." *Id*.

Here, Scottsdale's supplementary payments provision is identical to the one at issue in *Allen* and requires payment of post-judgment interest under the policies in addition to the limits of liability. Further, Smith prayed for "post-judgment interest *on the judgment*" in his Petition, (App. 0030; R. Doc. 1-2, at 5). In doing so, Smith requested two types of benefits under ADS's insurance policy with Scottsdale: (1) the policy limits; and (2) supplementary payments provision allowing the recovery of post-judgment interest. Since the "principal demand' under an equitable garnishment claim is the "insurance money" meant to satisfy the judgment, any of the benefits under that policy fall within the "principal demand" of an equitable

garnishment claim. Here, post-judgment interest is part-and-parcel the available "insurance money," making it part of the principal demand. Thus, under *Brown v. Webster* and *Edwards*, post-judgment interest on the underlying $54 million judgment must be included in the amount in controversy. In short, post-judgment interest—in the equitable garnishment context—is essentially "damage which the party [is] ***entitled*** to recover." *Brown*, 156 U.S. at 330 (emphasis added); § 379.200 (providing "the judgment creditor ***shall be entitled*** to have the insurance money") (emphasis added).

Other federal courts have come to similar conclusions in the insurance context. In *Snider*, the policyholder filed suit against insurers in federal court to recover on an underlying judgment, which included post-judgment interest. 360 F. Supp. at 930. Noting "interest on the judgment which the insurers are obligated to pay is liability imposed by law," the court found post-judgment interest is "part of the total liability on which the action is based"—that is, part of the "principal demand." *Id*. at 931.

Likewise, in *Gambino*, the plaintiffs sought to recover an underlying stipulated judgment from an insurer of exactly $75,000—just below the jurisdictional minimum. *Gambino v. Am. Guarantee & Liab. Ins. Co.*, No. 3:09-CV-00304(CFD), 2009 WL 3158151, at *1, n.1 (D. Conn. Sept. 28, 2009). The insurer

19

removed to federal court. The federal court held it had subject matter jurisdiction because "interest in a judgment sued on" merges into the underlying judgment. *Id*.

These decisions show that, in the insurance context, the insurer's duty to satisfy the entirety of liability arising from an underlying judgment—including post-judgment interest—is part of the "principal demand" on an insurance policy. This case even more compellingly demonstrates this principal because, here, Smith has filed an equitable garnishment claim to recover benefits under a policy containing a supplementary payments provision identical to *Allen v. Bryers* and praying for "post-judgment interest on the judgment" as part of the principal demand.

Smith and ADS failed to provide any authority justifying a contrary conclusion in their opposition to Scottsdale's Petition for Permission to Appeal. In fact, their cited cases support Scottsdale's position.

To begin, Smith and ADS cited the Second Circuit's decision in *Regan v. Marshall*, 309 F.2d 677 (2d Cir. 1962). *Regan* is distinguishable. There, unlike here, the plaintiff's claim was not for the recovery of an underlying judgment, so the recovery of anticipated interest if the plaintiff prevailed did not count. *Id*. at 678. *Regan* distinguished itself from cases like this one, noting:

> This is not a case where the principal claim itself, at the time it arose, was made up in part of interest. By the same token plaintiff's cases of suits upon judgments a component of which may have been interest on the original claim are not in point. In such cases, the judgment itself constitutes a new and single cause of action.

Appellate Case: 22-3436     Page: 29     Date Filed: 12/15/2022 Entry ID: 5227522

*Id.* (internal citations omitted).

In making this distinction, *Regan* cited *Richie v. Richie*, 186 F.Supp. 592 (EDNY 1960). Smith and ADS cited *Richie* for the proposition that only "matured" interest on an underlying judgment is part of the amount in controversy.[4] Aside from being non-binding, *Richie* actually supports Scottsdale's position. There, an ex-husband failed to pay an ex-wife $9,600 in support under a separation agreement. *Id.* at 593. The wife obtained a judgment in Washington state court against the husband that included pre-judgment interest, such that the overall judgment was for $10,785. *Id.* This exceeded the $10,000 jurisdictional threshold in 1960. The wife then sued to recover that amount in federal court in New York. The husband argued, like Smith and ADS do here, the minimum amount in controversy was not met because the interest on the underlying judgment could not be included. The court disagreed, reasoning that "Interest on a judgment merges into the judgment … The word 'interest' in 28 U.S.C. § 1332(a) means interest as interest. ***It does not include interest in a judgment sued on***." *Id.* at 594. (emphasis added). Thus, just as Scottsdale advocates here, interest on the underlying judgment is part of the "principal demand" that makes up the amount in controversy.

---

[4] Other Courts have rejected this "maturity" argument. *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968) (including all interest on promissory note in jurisdictional calculation because "the interest claimed here for the period before the maturity of the note is also not incidental or 'accessory' to the main obligation, but an integral part of the total obligation demanded from defendant by plaintiff.").

21

Smith and ADS also cited *State Farm v. Narvaez*, which is simultaneously distinguishable from this case while also containing reasoning that supports Scottsdale's position. There, State Farm filed a declaratory judgment action against a policyholder who made a claim for $50,000 in underinsured motorist benefits. *State Farm Mut. Auto. Ins. Co. v.* Narvaez, 149 F.3d 1269, 1270 (10th Cir. 1998). The jurisdictional minimum was more than $50,000 at the time. State Farm filed an amended complaint seeking a declaration it did not owe "interest on the unpaid insurance policies" in an attempt to meet the amount in controversy. *Id*. This clearly differs from the present case. Unlike here, where the policy itself contains a supplementary payments provision that makes post-judgment interest part of the "insurance money" at issue in a garnishment action, in *Narvaez*, no mention was made of such a provision. *Id*. *Narvaez* is factually distinguishable.

Further, *Narvaez's* recognition that the "amount in controversy is the maximum limit of the insurer's liability under the policy" supports Scottsdale's position here. *Id*. at 1271. After all, under Scottsdale's policy, post-judgment interest on the $54 million is part of the "maximum limit of [Scottsdale's] liability under the policy." *Narvaez* recognized that the diversity statute's exclusion of interest and costs is meant "to prevent the delaying of a suit merely to accumulate the necessary amount for federal jurisdiction." *Id*. Here, that policy is totally inapplicable, confirming Scottsdale's reading of the "principal demand" rule is correct here.

Appellate Case: 22-3436    Page: 31    Date Filed: 12/15/2022 Entry ID: 5227522

Scottsdale is the *defendant*, so it certainly did not delay filing suit to secure federal jurisdiction.

Smith and ADS's reliance on *Kadish*—a non-binding district court decision—is also misplaced. There, the plaintiff had an underlying judgment of $8,000 against the defendant. *Phoenix Scotts-Sports v. Kadish*, 321 F.Supp. 556, 557 (D.Ala. 1971). However, more than $2,000 in *pre*-judgment interest had accrued since that judgment was entered, meaning the minimum amount in controversy of more than $10,000 in place at the time was met. *Id*. *Kadish* did not address the effect *post*-judgment interest has on the amount-in-controversy calculation, making *Kadish* distinguishable.

The case law overwhelmingly supports including post-judgment interest in the jurisdictional calculation here. Scottsdale's policy makes post-judgment interest part of the benefits available under the policy. Smith's equitable garnishment action requested post-judgment interest in his prayer for relief. An equitable garnishment action is for the available "insurance money" to satisfy a judgment. RSMo. § 379.200. Thus, Smith is principally seeking to recover all available benefits under the insurance contract, including (1) the policy limits and (2) post-judgment interest under the supplementary payments provision. To say one set of benefits under that contract is part of the "principal demand," while the other is not, requires serious mental gymnastics inconsistent with Missouri law. *Allen v. Bryer's* held that post-

23

judgment interest on an underlying judgment is part and parcel of the benefits available in an equitable garnishment action where, as here, an identical supplementary payments provision was in the policy. Barring post-judgment interest from the jurisdictional calculation would allow Smith to avoid a federal forum while seeking more than $7 million in post-judgment interest in his "principal demand" when this case reaches trial. Siding with Smith and ADS here would turn *Brown v. Webster* on its head.[5]

---

[5] Smith and ADS may also cite a distinguishable Fifth Circuit decision, *Cleartrac*, which held that post-judgment interest on an underlying judgment could not be included in the amount in controversy. 53 F.4th 361, *4. The plaintiff there was a judgment creditor seeking to recover against the judgment debtor. In contrast, here, Smith has brought an equitable garnishment action seeking to recover insurance benefits *under an insurance contract*. The benefits under that contract include post-judgment interest under the supplementary payments provision. Cleartrac itself recognized this would be a distinguishing characteristic, as *Cleartract* addressed a situation in which, "no part of the post-judgment interest has accrued at the time the claim to enforce the judgment arose." That is not true here. Under § 379.200, an equitable garnishment claim cannot arise until 30 days after entry of the judgment because, in Missouri, judgment does not become final for at least 30 days, if not later. Mo. Sup. Ct. R. 81.05(a). Thus, with an equitable garnishment claim, post-judgment interest will necessarily accrue (for 30 days at least) before the claim arises.

Even if this Court agreed with Cleartrac's result, the particulars of this equitable garnishment claim show categorically disregarding post-judgment interest would undermine the U.S. Supreme Court's "principal demand" rule. Further, *Cleartrac's* reasoning that "[e]xcluding post-judgment interest from the calculation furthers § 1332(a)'s statutory purpose of preventing plaintiffs from delaying in filing suit until sufficient interest" is also totally inapplicable here. *Id*. No such incentive exists here because Scottsdale is a removing defendant. *Cleartrac* is wholly inapplicable.

24

In sum, binding precedent in *Brown* and *Edwards* hold that jurisdiction is measured by the amount of the "principal demand." *Allen v. Bryers* makes crystal clear that post-judgment interest is part of the "principal demand" in a Missouri equitable garnishment action when the policy contains a supplementary payments provision like Scottsdale's. Therefore, post-judgment interest on the underlying $54 million judgment is included in calculating the amount in controversy.

**B. The District Court Should Have Included Post-Judgment Interest on the $54 Million Judgment as of the Reasonably Anticipated Date of Trial in its Calculation of the Amount in Controversy.**

Because interest on the underlying $54 million judgment is included in the amount in controversy, the question is *how* to apply interest to this calculation. The District Court remanded the case because it calculated interest as of the date of removal rather than the approximate date of trial when fact finding occurs. As a result, the District Court concluded only $1.5 million in post-judgment interest was in controversy. The District Court's remand order is contrary to this Court's precedents holding that district courts must use "reasonable extrapolations" about what a fact finder could "legally conclude" at the time of fact finding when deciding the amount in controversy. Applying the appropriate standard, well over $5 million in post-judgment interest *alone* is "in controversy," in addition to the applicable $1 million policy limits across five policy periods (totaling $5 million).

Generally, "when a defendant seeks federal-court adjudication [by removing a case to federal court], the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). However, if the defendant's amount is contested, the removal statute requires "both sides to submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. To meet this standard, "the defendant may rely on 'reasonable deductions, reasonable inferences, or other reasonable extrapolations'" to establish the jurisdictional amount. *Waters*, 873 F.3d at 636. "[T]here is no demand at the early stages of removal to conclusively establish damages." *Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484, 491 (E.D. Mo. 2020). The reasonable extrapolation rule is used to estimate the amount "a *fact finder might legally conclude*" the plaintiff suffered in damages. *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 984 (8th Cir. 2019). The "case belongs in federal court unless it is ***legally impossible*** for the plaintiff to recover" in excess of $5 million. *Raskas*, 719 F.3d at 888 (quotations omitted) (emphasis added). This standard is forward-looking—what is legally possible to recover necessarily includes amounts awardable at the time of fact-finding in the future, not merely amounts awardable at present. *See id.*

26

But the District Court's remand order paradoxically declared what a *fact finder* could legally conclude at the *pleading stage*. Fact finding does not occur at the pleading stage. For this reason, the "reasonable deductions" about what a fact finder might "legally conclude" necessarily concern what a fact finder might do when fact finding happens, even if those reasonable deductions are made by the Court at the time of pleading. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) (noting jurisdiction is measured by what "the jury reasonably could have awarded," based on "information known to the court at the time jurisdiction was challenged").

The District Court's approach, however, "misapplies the time of filing jurisdictional rule by assuming that the amount of the claim asserted is equal to the amount of damages accrued. "To the contrary, the amount of the claim seems to depend more on the amount the plaintiff *is entitled to recover* through the single suit." *Shaw v. Gwatney*, 795 F.2d 1351, 1354 (8th Cir. 1986) (emphasis added). That means damages that "will accrue in the future are properly counted against the jurisdictional amount if a right to future payments will be adjudged in the present suit." *Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (4th Cir. 1976) (internal quotations and ellipses omitted); *see also Shaw*, 795 F.2d at 1355; *William B. Tanner Co. v. Cameron Radio, Inc.*, 617 F.2d 169, 173 (8th Cir. 1980). Smith's right to post-judgment interest that accrues until the future resolution of his equitable garnishment action will certainly be adjudged in the present suit. *See* § 379.200. Accordingly,

27

what matters for purposes of the amount in controversy is not the amount of post-judgment interest that had already accrued at the time of filing of Smith's garnishment action or its removal, but instead the future amount Smith "stands ultimately to recover" if successful. *Shaw*, 795 F.2d at 1355.

The District Court's remand order is inconsistent with Eighth Circuit precedent holding the amount in controversy is measured by what the plaintiff may recover *if he succeeds in the future*:

> it is the amount or value of that which the complainant seeks to recover, or the sum or value of that which the defendant will lose ***if the complainant succeeds in his suit***, that constitutes the jurisdictional sum or value of the matter in dispute…

*Hatridge v. Aetna Casualty & Surety Co.*, 415 F.2d 809, 815 (8th Cir.1969); *see also Shaw*, 795 F.2d at 1355 (approvingly citing *Broglie*, which "held diversity jurisdiction proper when a buyer's expenses in caring for a lame horse pending rescission of the purchase would accrue to more than $10,000 before the court could rule on a motion to dismiss, even though damages were less than $10,000 when the complaint was filed").

Indeed, the fact that a removing defendant may utilize "reasonable deductions, reasonable inferences, or other reasonable **extrapolations**" to establish the "amount in controversy" demonstrates the test is forward looking to the time of fact finding. *Lizama v. Victoria's Secret Stores, LLC*, 36 F.4th 762, 765 (8th Cir. 2022) (quoting *Waters*, 873 F.3d 633). This is because "extrapolating" is, by its nature, an act of

28

predicting what will likely occur in the future. According to Webster's dictionary, the verb "extrapolate" means: "***to predict*** by projecting past experience or known data" and "to ***project***, extend, or expand (known data or experience) into an area not known or experienced so as to arrive at a usually conjectural knowledge of the unknown area." (emphasis added).[6]

Considering this dictionary definition, it is clear that a reasonable "extrapolation" about what a fact finder might "legally award" necessarily relates to what that fact finder will do at the time fact finding occurs—that is, in the future at trial. In the context of CAFA, this Court has also noted that "[a]n amount is not 'in controversy' if ***no*** factfinder could legally award it." *Lizama*, 36 F.4th at 765. This implies the inverse as well – that is, if a fact finder ***could*** legally award an amount greater than the $5 million threshold, then it is, indeed, "in controversy."

Therefore, to extrapolate about what is, or is not, in controversy means to consider what a fact finder might do when the fact finder does it under this Court's precedents. Employing "reasonable extrapolations" about what a fact finder might legally conclude ***at the time of fact finding*** also reflects the common-sense reality that fact finding occurs ***after*** pleading. It would make little sense to consider what a fact finder might "legally conclude" at a time when fact finding does not occur. Here,

---

[6] Merriam Webster Online Dictionary, "extrapolate," <https://www.merriam-webster.com/dictionary/extrapolating>.

Appellate Case: 22-3436    Page: 38    Date Filed: 12/15/2022 Entry ID: 5227522

because trial of this matter would likely not occur for another 18 months (or more) after removal, it is a "reasonable extrapolation" that a fact finder could "legally conclude" 9% post-judgment interest on the $54 million judgment would exceed $7 million, easily meeting the $5 million jurisdictional minimum. As such, the District Court's remand order was erroneous and should be reversed.

### C. Even if the District Court was Correct in Considering Only Interest Accrued by the Date of Removal, the Remand Order was Still Erroneous Because $5 Million in Policy Limits Were At Issue, So Only a Single Cent of Interest was Necessary to Establish the Jurisdictional Amount.

The amount in controversy exceeded $5 million because the judgment implicated five policy periods totaling $5 million in policy limits. This means that only a penny of post-judgment interest establishes CAFA jurisdiction. The District Court erroneously rejected this position in contravention of (1) the due process rights of absent class members and (2) the plain text of Missouri's equitable garnishment statute.

*First*, the remand order violated due process. Smith's petition for equitable garnishment seeks to recover only a single $1 million policy limit from a single policy period (plus post-judgment interest)—that is, Smith only sought to recover funds from the policy period during which his individual claim arose. However, the "class" included 22,000 people with claims spanning five Scottsdale policy periods.

Appellate Case: 22-3436    Page: 39    Date Filed: 12/15/2022 Entry ID: 5227522

In remanding the case, the District Court reasoned "a plaintiff can define his class in a manner that deprives a court of jurisdiction under CAFA." (Remand Order, pg. 4).[7]

This remand order erroneously violated the class's due process rights by allowing Smith to abandon four-fifths of class members' claims that arose in policy periods other than his. Again, this was done without notice *ever* having been provided to the 22,000 class members. Both the Missouri and Federal civil procedure rules governing class certification require class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23(a)(4); Mo. Sup. Ct. R. 52.08(a)(4). "[T]he Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum*, 472 U.S. at 812; *accord State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735-36 (Mo. Banc 2004) ("[T]he due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff.").

---

[7] In reaching this conclusion, the District Court cited inapposite cases noting that CAFA jurisdiction could be established or disestablished by tinkering with the class definition. In *Hood*, this Court noted changing the class definition to include only "local citizens" could overcome the local controversy exception to CAFA jurisdiction. *Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263, 265 (8th Cir. 2015). In *Hargis*, this Court noted that a putative class representative could stipulate in the Complaint that she would not seek more than $5 million to avoid CAFA removal. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783 (8th Cir. 2012). Neither case applies because, here, Smith already obtained a judgment of $54 million for a "class" with claims implicating five Scottsdale policy periods. This means $5 million in policy limits are impacted by the underlying judgment.

31

Adequate representation is an imperative of due process because class representatives are tasked with resolving the claims of people who are not present to protect themselves. Being given such power, class representatives and class counsel assume fiduciary duties. *Sondel v. Northwest Airlines, Inc.*, 56 F.3d 934, 938-939 (8th Cir. 1995) ("certified representatives and the class counsel assume[ ] certain fiduciary responsibilities to the Class … the certified representatives may not take any action which will prejudice the Class's interest"). With these fiduciary duties, "[a] representative can't throw away what could be a major component of the class's recovery." *Back Doctors Ltd. V. Metro. Prop. & Cas. Ins. Co*., 637 F.3d 827, 830 (7th Cir. 2011).

Here, the underlying class action judgment purportedly resolved not only Smith's claims, but the claims of thousands across five separate Scottsdale policy periods. Yet Smith's petition for equitable garnishment purports to abandon four-fifths of the "class" by seeking only a single $1 million policy limit from one period instead of $5 million in limits over the five periods implicated by the judgment. This abandonment does not change the fact that the *entire* class's equitable garnishment claims are now barred by res judicata. *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982) ("After rendition of a final judgment, a class member is ordinarily bound by the result of a class action."). By acquiescing to this violation of Smith's fiduciary duties, the District Court's remand order violated due process. *State ex rel. Union*

*Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 735-36 (Mo. banc 2004) ("[T]he due process rights of absentee class members may be implicated if they are bound by a final judgment in a suit where they were inadequately represented by the named plaintiff.").

Smith and ADS cited *Marple v. T-Mobile Cent. LLC*, 639 F.3d 1109 (8th Cir. 2011) in their opposition to the petition seeking permission to appeal for the proposition that Scottsdale cannot argue that the limits of five policy periods are implicated because, in the underlying state court litigation, Scottsdale only disclosed the existence of a single $1 million policy period. However, *Marple* does not support this conclusion. In *Marple*, this Court held that the amounts in separate, but related, state court class action lawsuits against the same defendant could not be aggregated to establish CAFA's minimum amount in controversy. *Id*. at 1110-11. *Marple* distinguished itself from a Sixth Circuit decision allowing such aggregation only because the plaintiff in that action had initially filed a single state court class action, but then subsequently broke up that class action into separate cases, each seeking $4.9 million in damages. This was obvious gamesmanship designed to evade federal jurisdiction. In contrast, in *Marple*, the plaintiff filed separate state court class actions to mirror separate state court actions T-Mobile had filed against municipalities for over-taxation for the purpose of recovering the amounts T-Mobile passed on to consumers for that over-taxation. *Id*. at 1111.

33

Further, Smith and ADS's reliance on *Marple* ignores the context in which Scottsdale made those statements. Again, in October 2021, Smith was a ***putative*** class representative in an FCRA action against ADS. A class had not been certified. This means only Smith's ***individual claim*** was at issue. Until certification, the "claims of the putative class members [] are not before the court . . . ." *Ressler v. Clay Cty.*, 375 S.W.3d 132, 138 (Mo. App. W.D. 2012). *See also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) ("Class certification is the action that concretely identifies the plaintiffs; before that point, any plaintiffs beyond those named in the complaint are speculative and beyond the reach of the Court's power.").[8] A "class" from "the period from November 15, 2015, through October 31, 2019" was later "certified" through an illegitimate arbitration award. Then, Smith and ADS colluded—through a § 537.065 agreement—to have this arbitration award converted into a judgment without giving the "class members" any notice or opportunity to opt out in direct violation of due process. *Phillips Petroleum*, 472 U.S. at 812. Only after this "arbitration award" was rendered were the absent class member claims at issue, implicating all five policy periods. Before then, it would have been inherently speculative for Scottsdale to have identified any other

---

[8] The U.S. Supreme Court has called the contrary argument—that unnamed class members are parties before certification—a "novel and surely erroneous argument." *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011).

34

insurance policies besides the one implicated by Smith's individual claim when discussing potential settlement.

**Second**, the District Court's remand order is inconsistent with Missouri's equitable garnishment statute. Statutory construction starts with the statute's plain language. *Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co*., 597 S.W.3d 362, 367 (Mo. App. 2020). An equitable garnishment claim is inextricably intertwined with "the judgment" under the statute's plain language. The statute provides that "upon the recovery of a ***final judgment*** … [the plaintiff/judgment creditor] shall be entitled to have the insurance money … applied to the satisfaction ***of the judgment***." § 379.200, RSMo. If the judgment is not satisfied within thirty days, then "the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction ***of the judgment***." *Id*. An equitable garnishment action implicates all policy periods impacted by an underlying judgment. *See Ferguson v. St. Paul Fire & Marine Ins. Co*., 597 S.W.3d 249, 260-61 (Mo. App. 2019) (holding equitable garnishment plaintiff could recover for five policy periods during which injury occurred).

Under *Williams*, the ***true nature*** of the underlying proceeding determines whether there is CAFA jurisdiction. *See Williams v. Emps. Mut. Cas. Co.*, 845 F.3d 891, 898-902 (8th Cir. 2017). Here, Smith's equitable garnishment claim is predicated on the underlying $54 million judgment. That judgment implicates five

separate Scottsdale policy periods with $5 million in total policy limits. Thus, a fact finder could "legally conclude" that the underlying judgment applies to all five policy periods totaling $5 million.

Therefore, the District Court erred in holding Smith could abandon four-fifths of the underlying judgment. A total of $5 million in policy limits applies under the plain language of the equitable garnishment statute.

Only a single cent of post-judgment interest is necessary to meet the amount in controversy under CAFA. It is clear that at least *some* interest applies to calculating the amount in controversy because, as discussed, *supra*, interest on the underlying judgment is part of the Smith's "principal demand." Indeed, even Smith admits that interest that does not accrue "solely by virtue of the defendant's delay in payment" may be included in the amount in controversy. (App. 0240; R. Doc. 12, at 17). Here, the arbitration award was entered on April 5, 2022, and provided "post-award interest in the amount of 9% ***from the date of this award***." (App. 0071; R. Doc. 1-5, at 16).[9] Scottsdale was not given notice of this award. Several days later, on April 13, 2022, Smith filed the petition to confirm the arbitration award, which Scottsdale discovered on its own. Within those seven days, interest obviously accrued without any delay attributable to Scottsdale. Even under Smith and ADS's

---

[9] The judgment confirming that arbitration award also stated that interest ran "from the date of the award." (App. 0073; R. Doc. 1-6, at 2).

Appellate Case: 22-3436     Page: 45     Date Filed: 12/15/2022 Entry ID: 5227522

arguments, at least *some* interest merged into the judgment. With only a single cent of interest needed to exceed $5 million, the jurisdictional minimum under 28 U.S.C. § 1332(d) is established.

## CONCLUSION

For the foregoing reasons, Scottsdale requests this Court reverse the District Court's order remanding this case to state court.

Dated: December 14, 2022

**WATTERS, WOLF, BUB & HANSMANN LLC**

*/s/ Russell F. Watters*
Russell F. Watters, MO #25758
John D. Cooney, MO #61080
Lucas J. Ude, MO #66288
Benjamin S. McIntosh, MO #68248
600 Kellwood Parkway, Suite 120
St. Louis, Missouri 63017
  (636) 798-5070 - Telephone
  (636) 798-0693 – Facsimile
rwatters@wwbhlaw.com
jcooney@wwbhlaw.com
lude@wwbhlaw.com
bmcintosh@wwbhlaw.com
*Attorneys for Scottsdale Insurance Company*

37

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rules of Appellate Procedure 5(c) and 32(a) and Local Rule 28A, the undersigned counsel for Defendant-Petitioner Scottsdale Insurance Company certifies that this brief and/or addendum:

(i) complies with the limitation of Rule 32(a) because it contains 8,958 words, exclusive of the cover page, table of contents, table of authorities, disclosure statement, the proof of service, and the accompanying documents required by Local Rule 28A(g);

(ii) complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word and is set in Times New Roman font in a size equivalent to 14 points or larger; and

(iii) has been scanned for viruses and that the brief is virus-free.

Appellate Case: 22-3436    Page: 47    Date Filed: 12/15/2022 Entry ID: 5227522

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Appellant's

Brief was served the 14th day of December, 2022, via CM/ECF on:

Tom Hershewe
Lauren Dollar
Dollar Burns Becker & Hershewe
1100 Main Street, Suite 2600
Kansas City, MO 64105
tom@dollar-law.com
lauren@dollar-law.com
*Counsel for Defendant American*
*Detective Services*

Jayson A. Watkins
Charles Jason Brown
Brown & Watkins, LLC
301 S. US 169 Hwy
Gower, MO 64454
watkins@brownandwatkins.com
brown@brownandwatkins.com
*Counsel for Plaintiff James Smith*

Joshua David Scott
The Law Office of Joshua Scott, LLC
1100 Main Street
Suite 2600
Kansas City, MO 64105
816-876-2600
816-221-8763 (fax)
joshua@joshuascottlaw.com
*Counsel for Defendant American*
*Detective Services*

/s/ Russell F. Watters